### Turner v. Morgan, et al.

(Decided April 23, 1914.)

### Appeal from Allen Circuit Court.

Adverse Possession—Nature and Requisites—Hostile Character of Possession—Entry and Possession by Mistake.—Where the occupation of land is by a mere mistake and with no intention on the part of the occupant to claim as his own, land which does not belong to him, but he intends to claim only to the true line wherever it may be, the holding is not adverse, but where a person, acting under a mistake as to the true boundary between his land and that of another, takes possession of the land of another, believing it to be his own, up to a mistaken line, claiming title to it and so holding it, the holding is adverse, and if continued for the requisite period, will ripen into title.

BRADBURN & BASHAM, GOAD & OLIVER and O. M. HINTON for appellant.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

James Turner sued W. T. Morgan and others in the Allen Circuit Court in ejectment to recover the possession of fifteen acres of land.

The defendants pleaded that they had held the land in controversy under and by virtue of title papers for more than twenty-five years; and that they had held same by adverse possession for more than thirty years; and also pleaded champerty. A jury found for the defendants, and plaintiff appeals.

The parties own adjoining farms. The plaintiff testified himself and proved by other witnesses, that the

fifteen acres in controversy is within the lines of his deed.

The defendant, W. T. Morgan, testified that he had owned his farm for forty or more years; that he had had possession of the land in controversy about thirty years, enclosed by a fence which he built; that his title papers cover the land in controversy; that the calls in his deed and the calls in the plaintiff's deed binding on the land in controversy, are the same; that at the time plaintiff purchased his land, he, the defendant, had had undisputed adverse possession of the land in controversy for more than fifteen years, and that his deed was of record when plaintiff purchased the land owned by him. He also stated, however, that he claimed only the land covered by his deed, and had never at any time claimed otherwise.

The court instructed the jury in substance that if they believed from the evidence that the land in controversy was included in plaintiff's deed, they should find for plaintiff, unless they believed from the evidence that the land in controversy was also embraced in defendant's deed and that his title was the elder of the two, in which case they should find for defendant.

The court also gave an instruction on adverse possession and one on champerty; and it is of these two latter instructions that appellant complains, contending that same were unwarranted by the evidence.

The jury may have found for defendants under the first instruction; that is, upon the theory that the land was within the defendant's and without the plaintiff's boundary; or it may have found for defendants upon the ground of adverse possession of the disputed land for the statutory period. Hence, for the purpose of discussing the points raised by appellant, it will be conceded that the land in dispute was not within the calls of defendant's deed; and this being conceded, it follows that defendant took possession of the land in dispute under a mistaken belief as to the location of the true line between his land and that of plaintiff.

The rule on which appellant relies, and claims is here applicable, is thus stated in 1 Cyc., 1036, as follows:

"Where the occupation of land is by a mere mistake, and with no intention on the part of the occupant to claim as his own, land which does not belong to him,

but he intends to claim only to the true line, wherever it may be, the holding is not adverse.''

There are cited in support of this rule, the following Kentucky cases: Holmes v. Herringer, 13 S. W., 359, 12 R., 22; Scheible v. Hart, 12 S. W., 628, 11 R., 607; Hunter v. Crisman, 45 Ky., (6 B. M.) 463; McKinney v. Kenney, 8 Ky. (1 A. K. M.) 461; Rudd v. Monarch, 32 S. W., 1083; 17 R., 893: These cases support the rule stated.

But there are two classes of these cases where possession is taken of the land of another under a mistaken belief as to the true location of the line; one where the claimant by his claiming concedes that there may be a mistake and intends to claim only such land as really belongs to him, and to surrender any lands held by him not on his side of the true line; and under this rule, such holding is not adverse. The other is where the claimant, by the nature of his claiming, does not concede that there may be a mistake as to the location of the true line, and evinces no intention of surrendering any land held by him, but claims it as his own; and under this rule, the holding is adverse.

It is conceded that Morgan claimed the disputed land under a mistaken belief as to the true location of the line, and thus came within the first requirement of the rule relied on by appellant. But it cannot be said that he had no intention to claim land which did not belong to him, for he claimed the land up to the fence, and in doing so, he claimed land beyond the true line; nor was there any intention on his part, as shown by the record, to claim only to wherever the true line might be, for there was no doubt or uncertainty upon his part as to the true location of the line. He claimed that the true line was where he built his fence. He claimed that his deed covered all the land up to that fence; and he claimed all the land up to that fence as his own; and there was absolutely no recognition upon his part of any possible right of another to any of the land so enclosed within his fence.

A somewhat similar state of facts is found in the case of Davis v. Braswell, 186 Mo., 576, 84 S. W., 873. In that case, there was evidence that the defendant for twenty-seven years claimed up to a fence as the correct line, cleared the land, and built a house upon the disputed land, openly and notoriously claiming it. The court said:

"The mere fact that he (the defendant) said he did not want any of his neighbor's land, when at all times he was claiming this was not his neighbor's, did not affect his adverse possession."

In the case at bar, Morgan claimed under his deed, but he also claimed that his deed included the land in dispute; he also claimed that the fence was on the true line, and he claimed all the land up to that fence, as his own land; and claiming it as his own, precluded any possibility of admission upon his part of ownership in another.

In Arnold v. Evans, (Tex.), 140 S. W., 497, it is said: "The evidence shows that the lots adjoin, lot 18 lying to the north of lot 17. Appellee took possession of lot 17 on June 1, 1900. The lot was fenced when he took possession of it, and he entered, believing he was taking possession of his land, which he continued to possess from that time until the bringing of this suit in July, 1910, claiming the same as his own, living on it with his family. Appellee has since his entry claimed the lot as fenced. It is true, appellee says he only claimed lot 17, paid taxes on it, and is not now undertaking to claim anything but lot 17; but his claim is that the part which is enclosed is lot 17, and that it does not include any of lot 18. Appellee has only claimed that which he has enclosed, and as to that enclosed, he has fully met the requirements of the statute, which vests in him title to the strip."

In a similar case, Bowers v. Ledgerwood, 25 Wash., 14, 64 Pac., 936, the court said: "The question of adverse possession is one of fact; and though the fence may have been established originally by mistake, if it were followed by a claim to the land and such acts as clearly evidenced a determination of permanent proprietorship, the claim is established. The intention of the party claiming adverse possession, and also the notice of such claim to the real owner must be inferred from the acts and declarations of the parties." See also McCormack v. Sorenson, 137 A. S. R., 1047.

It will thus be seen that the facts in the case at bar do not bring it within the rule relied on by appellant.

The rule which is applicable to the facts here shown is that stated in 1 Cyc., 1038, as follows:

"Where a person, acting under a mistake as to the true boundary between his land and that of another,

takes possession of the land of another, believing it to be his own, up to a mistaken line, claiming title to it, and so holding, the holding is adverse, and if continued for the requisite period, will give title by adverse possession."

In this case, Morgan, acting under a mistake as to the true boundary between his land and that of plaintiff, took possession of the land of another, believing it to be his own, up to a mistaken line, claiming title to it, and so held it; and under the rule stated, that holding was adverse.

This is not a case of mutual agreement or mistake between adjoining land owners as to the true location of the line between them. Morgan claimed the fence to be the true line, and he made that claim, so far as the record shows, without reference or regard to what the views of the adjacent owner might have been as to the true location of the line. Nor was it a mere holding beyond the true line for convenience until the true line could be definitely ascertained, as in the cases of Small v. Hamlett, 68 S. W., 395, 24 R., 238, and Reed v. Gilliam, 140 Ky., 824.

Morgan fenced what he claimed to be his land. He effected a visible appropriation of the land so fenced, and he thereby manifested his intention to claim and assert ownership thereof up to that fence. Nor is there any evidence in the record that such claim and holding was subject to or conditional upon any subsequent ascertainment of the location of the true line. So far as he was concerned, he believed he knew where the true line was; he built his fence upon it, and visibly appropriated the land up to it, claimed title to it, as his own land, and necessarily to the exclusion of any possible ownership in another; and he did all this without reference or regard to the adjacent land owner. He held under his deed, it is true, but nevertheless, he held and claimed it as his own, adversely against the world; and such holding was adverse, and was such a holding as will ripen into title in the statutory period.

In the case of Battner v. Baker, 108 Mo., 311, 18 S. W. 911, 32 A. S. R., 606, there was in dispute a strip of land between two adjoining land owners. Upon the trial the defendant testified as follows: "I have always claimed the land up to the fence. I claimed it because I thought it was mine, and still think so. I intended to

claim to the true line, but thought the fence was the true line, and only claimed to the fence because I thought it was the true line." The question presented was whether such possession had been adverse. The court said that where adjoining land owners are divided by a fence which they suppose is the true line, each claiming only to the true line wherever that may be, they are not bound by the supposed line, and must conform to the true line when it is ascertained; but "where one takes and holds possession up to a fence and claims to be the owner of it, his possession will be adverse, and this too, though he may believe the fence to be on the true line, when in point of fact it is not on the true line."

In the case at bar, defendant's possession of the disputed land was adverse from the time he enclosed it, and this being true, both the instruction on adverse possession and the instruction on champerty were authorized by the evidence.

The judgment is therefore affirmed; whole court sitting.