## MARCUM v. NOBLE et ux.

Court of Appeals of Kentucky.

Oct. 12, 1951.

Williams & Allen, Jackson, for appellant.
Moss Noble, Jackson, for appellees.

MORRIS, Commissioner.

This is a case in which a boundary line is disputed between adjoining landowners, appellees claiming a boundary line established by adverse possession and appellant relying on a line established by deed. Appellant urges a reversal on the following grounds: (1) the court erred in overruling his motion for a directed verdict; (2) the appellees were allowed to present irrelevant and prejudicial evidence; and (3) the court erred in its instructions to the jury.

On April 17, 1903, G. W. Noble and wife, who then owned both boundaries, conveyed one of them containing one hundred and thirty-four acres to J. B. Marcum, who had his wife named as grantee in the deed. Appellee, M. C. Noble, a son of C. W. Noble, was deputy clerk at the time of the transaction and the conveyance was acknowledged before him. J. B. Marcum was killed a few days thereafter and his widow kept the land until 1944, when she conveyed it to her son, appellant herein.

On September 28, 1903, G. W. Noble and wife conveyed the other boundary of one hundred acres more or less to M. C. Grigsby, and in 1905 Grigsby and wife conveyed it to appellee, the description following that in the Grigsby deed.

The parties thus held and kept their respective boundaries without dispute concerning the line until in April, 1944, when appellant had a surveyor run the lines of

his boundary according to the calls in his deed. A few days thereafter, appellees filed their petition, alleging that they were the owners of the boundary of land conveyed to them by Grigsby and that defendant was wrongfully claiming "approximately three acres" of it. On February 26, 1946, almost two years after the original petition was filed, plaintiffs filed an amended petition (without objection) describing the land as described in the original petition down to the seventh call, where the Marcum boundary line is called for. At this point the amended petition departs from the calls in his deed and proceeds to describe the land by a well-defined boundary.

Appellant filed an answer disclaiming any part of the land described in the original petition and later filed an amended answer, in the first paragraph denying the allegations of the amended petition and in the second paragraph describing the boundary owned by him and alleging that appellees were claiming a portion of the land embraced in his boundary. There was no allegation of adverse possession.

No other pleading was thereafter filed by either party. The case on motion of appellant was finally transferred to the common-law side of the docket (without objection) and tried before a jury, ten of whom returned a verdict for plaintiff, and judgment was entered adjudging plaintiffs to be the owners of the boundary described in the amended petition.

Appellee in effect contends that the boundary set out for his property in his original petition followed that laid out in the deed from M. C. Grigsby; that it is uncertain because of changes put in the deed by Jim Marcum, the appellant's father, and the fact that it had never been established. Further, he contends that he has valid title to the property, the boundary lines of which he stated in his amended petition, by adverse possession. He testified that he marked this line with rocks after he had filed his original petition. He claims that he has had possession of and occupied this property since 1905, when he first took possession under the Grigsby deed. He asserts that the appellant "invaded" his property. To sustain his posi-

tion, he, his wife and one other witness so testified, and there was no proof offered in denial.

Appellant's contention is that he had the property which was conveyed to him by his mother in 1944 surveyed in April of that year; that appellee was present and designated the starting point; that he, appellant, claimed only the tract described in his deed, the same conveyed in the deed from G. W. Noble to his mother in 1903. He asserts that the appellee's line, as laid out and established by the rocks, invades his property some 100 to 150 feet.

In this situation, in which there is a boundary dispute between two adjoining landowners, the main question is: Did the appellee fulfill the prerequisites of adverse possession by holding this land in the manner he testified he had?

■■■ In Kentucky, in this situation in which there is a disputed boundary line, possession is adverse if property is held with the intention of claiming to such boundary line, though it may be incorrect. If the possession is with the intention of claiming only if the boundary is correct, it is not adverse. This rule is stated in 2 C.J.S., Adverse Possession, § 84, p. 632:

"There is a great diversity of opinion as to the effect of taking possession of lands under a mistake as to the boundary thereof; some decisions hold broadly that possession up to a fixed boundary in misapprehension or ignorance of the true boundary is necessarily hostile and will ripen into adverse title, on the theory that the visible possession itself imports hostility and claim of right, or under the influence of local statutory provisions making the physical characteristics of possession the sole test of adverse possession. The weight of authority, however, is to the effect that the character of a possession up to a supposed line under a mistake respecting location of the true line is dependent upon the possessor's intent with respect to ownership, being * * * adverse if the intent is to hold to the fixed line regardless of the location of the true boundary or in the firm but erroneous belief that the boundary fixed is the true line, and being amicable if the in-

tent is to claim only to the true line wherever it may be located.

"Under the view that the possessor's intent with respect to claim of ownership is controlling, it is unimportant whether he made a mistake as to location of the true boundary, or whether he acted in good or bad faith, and it is the presence or absence of the requisite intention, not that of mistake, which determines the character of possession."

This rule prevails in Kentucky. Heinrichs v. Polking, 185 Ky. 433, 215 S.W. 179; Wilson v. Shepherd, 244 Ky. 225, 50 S.W.2d 540; Carpenter v. Rose, 186 Ky. 686, 217 S.W. 1009, and other cases. The important element of adverse possession in Kentucky, as above mentioned, is the intent to adversely hold another's property for the statutory period of fifteen years. Brunton v. Roberts, 265 Ky. 569, 97 S.W.2d 413, 416, 107 A.L.R. 1289.

The jury found that the appellee held the property adversely to the disputed line. Under the above rule of law, this would give the appellee valid title to this property, a well-defined boundary, notwithstanding it was not the boundary laid out in his record deed, but went beyond it. Stephens v. Kidd, 298 Ky. 38, 181 S.W.2d 688.

Taking the grounds for reversal in reverse order, the court below did not commit an error in presenting its instructions to the jury, as contended by the appellant. The instructions correctly spelled out the facts to be included to constitute adverse possession—that the plaintiffs held possession of the tract of land described in their amended petition and in evidence herein under color of title to a well-marked boundary, openly, notoriously, hostilely and adversely to the defendant for a period of fifteen years, occupying and using the same under said claim of right.

There is ample proof to support the verdict found for the appellee. The appellee's testimony, that of his wife and that of his brother was presented, without contradictory proof.

Counsel for appellant insist that the court allowed incompetent and preju-

dicial evidence to go to the jury. We have carefully reviewed the evidence objected to as set out in appellant's brief. Some was incompetent, and some irrelevant. The court had difficulty in handling the witness (appellee), but we think properly admonished the jury not to consider the challenged incompetent evidence. This being so, we cannot conclude that the jury was improperly swayed either by the "conduct" of the witness or by the incompetent and irrelevant testimony, most of which related to the matter of "boundary", not to adverse possession.

Appellant's contention that he was entitled to a directed verdict is not well taken. His pleading and the proof raised issues properly submissible to a jury, so the court committed no error in this respect.

It follows that the judgment should be, and it is, affirmed.