**Doyle JOHNSON and Beulah Johnson, Appellants,**

v.

**James KIRK and Lou Kirk, Appellees.**

Court of Appeals of Kentucky.

April 22, 1983.

William Lawrence Roberts, Randy G. Clark, Pikeville, for appellants.

Phil A. Stalnaker, Burke, Stalnaker & Scott, Pikeville, for appellees.

Before HOWARD, HOWERTON and PAXTON, JJ.

PAXTON, Judge.

Doyle Johnson and Beulah Johnson appeal a judgment of the Pike Circuit Court, sitting without a jury, dismissing their complaint in which they asserted ownership in a parcel of land claimed by James Kirk and Lou Kirk.

The Kirks purchased lot # 4 in the Brierwood subdivision of Forest Hills, Pike County, Kentucky on April 10, 1975. Shortly after purchasing lot # 4 they erected a fence around their house, but not around the entire lot.

The Johnsons purchased lot # 3 in Brierwood on April 18, 1978. The Kirks' south boundary line is the Johnsons' north boundary line. The fence that the Kirks put on their south boundary line was in place when the Johnsons purchased lot # 3 and the fence has not been moved since. By plat entered into evidence through stipulation, it is evident that the fence is actually on the Johnsons' lot. The Kirks did not intend to claim anybody else's property at the time the fence was erected; they simply put it "where the markers were" thinking that was their property line.

The findings of fact entered by the court are not challenged, except the Johnsons complain that the court failed to consider whether the holding of the property by the Kirks was of the character that would ripen into title through adverse possession. Based on its findings of fact and conclusions of law, the trial court entered judgment dismissing the complaint and held that the fence erected by the Kirks would be treated as the boundary line and "so much of the plaintiffs' deed as describes property within said fence line is void". Although not stated in the judgment, it is apparent from the record that the trial court's ruling is based on champerty. The Johnsons appeal this judgment. We affirm.

The Johnsons' sole contention is "The Pike Circuit Court's decision that the appellees were adversely possessing the property and therefore the conveyance to the appellants was champertous is erroneous as a matter of law".

KRS 372.070(1) provides:
Any sale or conveyance . . . of any land . . . of which any other person has adverse possession at the time of the sale or conveyance, is void.

Kentucky, at statehood, adopted a policy against champertous conveyances of land and KRS 372.070(1), or a statute substantially like it, has been in effect in this Commonwealth since 1824. See *Altemus v. Nickell*, 115 Ky. 506, 74 S.W. 221 (1903). It is clear that although the adverse possession envisioned by the statute does not have to continue for any specific time, it must be in existence when the conveyance complained about is made and must be of the same character that would cause the possession to ripen into title if held for the statutory period. *Deaton v. Morris*, 308 Ky. 754, 215 S.W.2d 854 (1948). In order to ripen into title if held for the statutory period, the possession must be open, hostile, and notorious to a well-defined boundary; thus giving the world, and especially those in interest, notice of the extent of the claim. *LeMoyne v. Hayes*, 145 Ky. 415, 140 S.W. 552 (1911). Although the Kirks did not intend to put their fence on someone else's property they, in fact, did. They put the fence on a line formed by some stakes and held out to all the world that the property so enclosed was theirs. It should have been apparent to the most casual observer, and particularly to the Johnsons and their predecessor in title, that the Kirks were claiming the fenced-in property as their own. The Johnsons acknowledge that when they purchased lot # 3 the Kirks had the disputed property enclosed by a fence and were using it as their own. Their contention is that the holding is not adverse because of the Kirks' admission that they thought they had placed the fence on the true boundary line

and had no intention (when the fence was constructed) of claiming anyone else's property.

In *Turner v. Morgan,* 158 Ky. 511, 165 S.W. 684 (1914), James Turner sued to recover possession of fifteen acres of land from W.T. Morgan. Turner proved the fifteen acres in dispute were included in the calls in his deed; Morgan offered evidence to prove that he had enclosed the fifteen acres with a fence and had so possessed the property for more than fifteen years before Turner purchased his land. The jury found for Morgan and the appellate court, because it could not determine under which of three theories the verdict was returned, assumed for the purpose of deciding the case that Morgan took possession of the fifteen acres under a mistaken belief as to the location of the true line between his property and that of Turner. The court, in responding to Turner's argument that Morgan occupied the land by mistake with no intention to claim anything except to the true line wherever that may have been and thus could not be considered in adverse possession of the fifteen acres, said:

> In the case at bar, Morgan claimed under his deed, but he also claimed that his deed included the land in dispute; he also claimed that the fence was on the true line, and he claimed all the land up to that fence, as his own land; *and claiming it as his own, precluded any possibility of admission upon his part of ownership in another.*

*Id.* at 514, 165 S.W. at 685 (emphasis supplied). The court, in *Turner,* went on to review relevant law in other states and approved the following language from Missouri:

> The mere fact that he (the defendant) said he did not want any of his neighbor's land, when at all times he was claiming this was not his neighbor's, did not affect his adverse possession.

*Id.* at 514, 165 S.W. at 685, *quoting Davis v. Braswell,* 185 Mo. 576, 84 S.W. 870 (1904). *See generally,* 7 *Powell on Real Property* ¶ 1013(2)(f)(i) (1949).

We believe the question is one of the intent of the adverse holder *at the time the possession began. Heinrichs v. Polking,* 185 Ky. 433, 215 S.W. 179 (1919). In *Heinrichs,* the court said:

> The intention with which the occupation is made always determines and fixes its character as being adverse or otherwise, and not the fact, that the occupation is based upon a mistake or in other words, the fact, that the occupation is based upon a mistake, does not prevent it from being adverse, if the intention is to claim and hold the land, as one's own, up to a mistaken line, if the occupant claims the line to be the true one, and that his deed embraces the land.

*Id.* at 438, 215 S.W. at 181–82. The Kirks intended to only hold property that they owned, but they actually thought they put the fence on their property line, and they intended to hold all the property that was enclosed in the fence as their own. The fact that they later discovered their error in putting the fence on someone else's property in no way changes their intention at the time the fence was erected. The Johnsons' grantor might well have had a cause of action and recovered the land in dispute had he sued in ejectment. But he did not do so, and the law is well-settled that one cannot sell a lawsuit. *See Perry v. Wilson,* 183 Ky. 155, 208 S.W. 776 (1919); *Altemus, supra;* 14 Am.Jur.2d *Champerty and Maintenance* § 11 (1964).

We hold that a conveyance of land is void to the extent it includes land held by one other than the grantor, in such a manner that if held for the statutory period the holding would ripen into title, even though the adverse holding originated because of a mistaken belief by the adverse holder as to the true location of the boundary line.

The judgment of the Pike Circuit Court is affirmed.

All concur.