**David C. VICK, Appellant**

v.

**Belinda K. ELLIOT and her spouse, Lal Elliot;  Gary W. Doom and his spouse, Jennifer Doom;  Marsha K. Doom, now Metzger, and her spouse, Joe Metzger;  Sheri L. Trimble and her spouse, Danny Trimble;  Gary W. Doom, Administrator of the Estate of S.C. Doom, Jr., deceased;  and the Unknown Heirs of S.C. Doom, Jr., deceased, Appellees.**

No. 2012–CA–000364–MR.

Court of Appeals of Kentucky.

May 17, 2013.

Rehearing Denied July 2, 2013.

Discretionary Review Denied by Supreme Court Feb. 12, 2014.

L. Miller Grumley, Paducah, KY, for Appellant.

William F. McGee, Jr., Smithland, KY, for Appellees.

Before ACREE, Chief Judge; TAYLOR and VANMETER, Judges.

## OPINION

VANMETER, Judge:

David Vick appeals from the judgment of the Livingston Circuit Court which denied his claim to quiet title and granted the counterclaim of adverse possession asserted by Belinda K. Elliot, et al.[1] (hereinafter collectively referred to as the "Doom heirs"). Finding no error, we affirm.

---

1. Lal Elliot, Gary W. Doom, Jennifer Doom, Marsha K. Doom (now Metzger), Joe Metzger, Sheri L. Trimble, Danny Trimble, Gary W. Doom, as administrator of the Estate of S.C. Doom, Jr., and unknown heirs of S.C. Doom, Jr.

■ Vick filed the underlying action to quiet title to a 150–acre tract of property located in Livingston County that he purchased in 2007. The property abuts a tract which was purchased by S.C. Doom, Jr. from Keith Walker and his wife in 1990. Doom Jr. died intestate in 2010, and the property passed to his heirs. When Vick purchased the 150 acres, a dispute arose between the adjoining landowners concerning a parcel of property in the shape of a triangle that was encompassed by an old fence on the side of the Doom property, but was contained within the property description of the Vick property. Believing the parcel of property to be his, Vick tore down a deer stand and portions of the fence erected on the parcel. He then filed this action to quiet his title. The Doom heirs filed a counterclaim alleging title to the parcel of property by way of adverse possession.

During a bench trial, Walker testified that he had lived on what is now the Doom property until 1960 and his father lived on the property until approximately 1970. No one has lived on the property since that time. Keith stated that the fence enclosing the parcel has been in place since at least the 1940s and that his family had always treated it as the boundary line separating their property and the Vick property. Keith and his family would often hunt up to the fence line.

Earl Sullivant testified that within one or two years after Doom Jr. purchased the Doom property in 1990, he and Doom Jr. erected a deer stand on the parcel. Gary Doom, a Doom heir, testified that he and his brother regularly visited the farm after its purchase by their father. The farm was primarily used for hunting, fishing, and gardening. Gary testified that he never hunted across the fence line without permission, and no dispute over the fence line or the location of the deer stand occurred until Vick purchased the adjoining property.

The trial court denied Vick's claim to quiet title with respect to the parcel of property and granted the Doom heirs' claim to title through adverse possession. The trial court concluded that due to the nature of the property and the substantial length of time the fence was treated as a boundary line, the property was adversely possessed for the statutory period of time, despite its use for only recreational purposes since 1970. This appeal followed.

■ Our standard of review with respect to property title disputes is to determine "whether or not the trial court was clearly erroneous or abused its discretion[.]" *Phillips v. Akers,* 103 S.W.3d 705, 709 (Ky.App.2002) (citing *Church & Mullins Corp. v. Bethlehem Minerals Co.,* 887 S.W.2d 321, 323 (Ky.1992)). We will not set aside factual findings of the trial court "unless they are clearly erroneous, that is not supported by substantial evidence." *Phillips,* 103 S.W.3d at 709 (citations omitted).

On appeal, Vick claims the trial court erred by granting title to the Doom heirs on their claim of adverse possession because the evidence did not support such a finding. We disagree.

■ To quiet title by way of adverse possession, the claimant must demonstrate by clear and convincing evidence "possession of disputed property under a claim of right that is hostile to the title owner[']s interest." *Id.* at 708. The "possession must be shown to be actual, open and notorious, exclusive, and continuous for a period of fifteen years." *Id.* (citing *Tartar v. Tucker,* 280 S.W.2d 150, 152 (Ky.1955); *Creech v. Miniard,* 408 S.W.2d 432, 436 (Ky.1965); KRS [2] 413.010). To constitute

**2.** Kentucky Revised Statutes.

"open and notorious" possession, the possessor must " 'openly evince a purpose to hold dominion over the property with such hostility that will give the non-possessory owner notice of the adverse claim.' " *Phillips,* 103 S.W.3d at 708 (quoting *Appalachian Reg'l Healthcare, Inc. v. Royal Crown Bottling Co.,* 824 S.W.2d 878, 880 (Ky.1992)).

In particular, Vick takes issue with the trial court's ruling that the property in question was "actually" possessed for the statutory period of fifteen years. Generally, mere recreational use of land alone is not adequate to establish possession. *Moore v. Stills,* 307 S.W.3d 71, 80 (Ky. 2010). Indeed, the amended version of KRS 411.190(8), the Recreational Use Statute, provides, "[n]o action for the recovery of real property, including establishment of prescriptive easement, right-of-way, or adverse possession, may be brought by any person whose claim is based on use solely for recreational purposes." Citing a wide range of Kentucky cases addressing recreational use of property, the court in *Moore* specifically noted that "with the possible exception of unusual circumstances ... the mere recreational use of property has as its aim the enjoyment of the land as it naturally is, and thus by its nature, recreational use will be sporadic and insubstantial." *Moore,* 307 S.W.3d at 79. The unusual circumstances may concern the character of the property, such as its physical nature and the use to which it has been put. *Id.* (citing *Appalachian Reg'l Healthcare, Inc.,* 824 S.W.2d at 880). However, irrespective of the character of the property, any use of the land "must still be so substantial as to put the owner on notice that his or her dominion over the land is being usurped." *Moore,* 307 S.W.3d at 79.

The construction of a fence which indicates a clear claim to a parcel of property may satisfy the element of possession in an adverse possession claim. *See Tartar,* 280 S.W.2d at 153; *Flinn v. Blakeman,* 254 Ky. 416, 433, 71 S.W.2d 961, 969 (1934). In the unpublished case of *Wagner v. Wilson,* 2010 WL 5128615 (Ky.App. 2010)(2008–CA–000955–MR, 2008–CA–001033–MR), this court distinguished *Moore,* and held that despite a property only being used recreationally, enclosure of the property by a fence was sufficient to satisfy the element of "actual" possession in an adverse possession claim. *Id.* at *7. A multitude of other Kentucky cases support this position. *See Johnson v. Kirk,* 648 S.W.2d 878, 879 (Ky.App.1983) (holding that although owners did not intend to put a fence on someone's else's property, once they did, they held out their claim of possession to the world, which satisfied the possession element of adverse possession); *Newman v. Sharp,* 248 S.W.2d 413, 415 (Ky.1952) (holding that "[l]and claimed to a well-defined boundary such as a fence ... if the possession thereof is open, notorious, adverse, and continuous for a period of 15 years or more, such possession is sufficient to sustain the claim of title by adverse possession[ ]"); *City of Hartford v. Nall,* 144 Ky. 259, 261–62, 137 S.W. 1090, 1091 (1911) (holding that when a person holding land has enclosed the land for use and occupation, he has established an adverse holding).

In this case, the evidence demonstrated that the disputed parcel of property had been enclosed by a fence on the Doom side of the property since at least the 1940s. This fence provided notice to interested persons that the Walkers and subsequently the Dooms held the property to be their own. The record further reveals that Vick was aware of the fence and the deer stand when he purchased the property, and purchased it nonetheless. The trial court further found the circumstances did not indicate the Doom heirs attempted to encroach on Vick's property by expanding their

boundary via the fence since the fence was likely erected as a boundary line as early as the 1940s. Vick argues that because the use of the Doom property was sporadic since 1970, the adverse possession claim is not viable under the statute of limitations; however, that argument overlooks the continuous existence of the fence since the 1940s. As cited above, under Kentucky law, this fenced enclosure amounts to "actual possession" for purposes of a claim of adverse possession, not the sporadic recreational use of the property. Accordingly, the trial court did not err by finding in favor of the Doom heirs, and denying Vick's claim to quiet title.

The judgment of the Livingston Circuit Court is affirmed.

ALL CONCUR.